LEXSEE 2007 US DIST LEXIS 90555

**KELLY BARRINGTON, GABRIEL MARTINEZ, and VERNELL ROBERTS, on behalf of themselves and others similarly situated, Plaintiffs, vs. MORTAGE IT, INC, a foreign corporation, Defendant.**

**CASE NO. 07-61304-CIV-COHN/SELTZER**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA**

*2007 U.S. Dist. LEXIS 90555*

**December 10, 2007, Decided
December 10, 2007, Docketed**

**COUNSEL:** [*1] For Kelly Barrington, Plaintiff: Robert Scott Norell, LEAD ATTORNEY, Robert S Norell PA, Plantation, FL; Christopher Charles Sharp, Sharp Law Firm, P.A., Plantation, FL.

For Gabriel Martinez, Vernell Roberts, on behalf of themselves and others similarly situated, Linda A. Brown, James S. Knapp, Giselle Morrison, Harold Singh, Narene B. Weston, Araceli Vasquez, James Olacio, Kemly Joseph, Thanh Luc, Lydia Sterling, Shakira Beersingh, Plaintiff: Robert Scott Norell, LEAD ATTORNEY, Robert S Norell PA, Plantation, FL.

For Silvia Garza, Plaintiff: Christopher Charles Sharp, Sharp Law Firm, P.A., Plantation, FL; Robert Scott Norell, LEAD ATTORNEY, Robert S Norell PA, Plantation, FL.

For Luis Maldonado, Plaintiff: Christopher Charles Sharp, Sharp Law Firm, P.A., Plantation, FL; Robert Scott Norell, LEAD ATTORNEY, Robert S Norell PA, Plantation, FL.

For Mortgage It, Inc., a foreign corporation, Defendant: Athalia Lujo, Morgan Lewis & Bockius, Miami, FL.

**JUDGES:** BARRY S. SELTZER, United States Magistrate Judge.

**OPINION BY:** BARRY S. SELTZER

**OPINION**

**ORDER GRANTING PLAINTIFFS' MOTION TO QUASH SUBPOENAS**

THIS CAUSE is before the Court on Plaintiffs' Motion to Quash Subpoenas to Non-Parties, or in the Alternative, Motion for Protective [*2] Order (DE 16), and the Court being sufficiently advised, it is hereby ORDERED that Plaintiffs' Motion is GRANTED for the reasons set forth below.

**I. BACKGROUND**

This is an action for overtime compensation under the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 201, et seq.* Plaintiffs bring this action on behalf of themselves and other similarly-situated employees who worked for Defendant Mortgage IT, Inc. as Asset Analysts and Correspondence Liaisons [1] in its Sunrise, Florida facility. In addition to the 3 original Plaintiffs, at least 17 other individuals ("opt-ins Plaintiffs") have filed consentforms to join in the action. Defendant has asserted various defenses, including that it properly classified Plaintiffs as exempt under one or more of the FLSA white collar exemptions, such as the "administrative, executive, highly compensated, profession, retail or service establishment, combination, and/or outside sales exemptions." Affirmative Defenses at P 2 (DE 28).

> 1    Defendant denies that it employed any Plaintiff as a Correspondence Liaison. Answer at 2 n.1 (DE 28).

On or about October 24, 2007, Defendant issued 25 subpoenas *duces tecum* (to obtain documents without depositions) directed to [*3] Plaintiffs' and opt-ins Plaintiffs' former employers, all of whom are in the financial services and/or mortgage industries. Each subpoena seeks production of the following documents:

Any and all documents, files and records, reflecting or relating to the employment of [Plaintiff, SSN: xxx-xx-xxxx; DOB: dd/mm/yy], including but not limited to job application(s), personnel file, interview notes, performance evaluations, termination or resignation notices, payroll records, income tax forms, and any other personnel documents including, but not limited to those maintained by the Human Resources department.

See Subpoenas (DE 16-2). Plaintiffs have moved to quash these subpoenas under *Federal Rule of Civil Procedure 45* or, in the alternative, they seek a protective order under *Federal Rule of Civil Procedure 26* (DE 16). [2] Defendant has responded to the Motion (DE 35), and Plaintiffs have replied thereto (DE 40). The Motion is now ripe for decision.

> 2    It appearing that the non-party employers were to produce the documents before Defendant's response to the instant Motion was due and before the Court would have had an opportunity to rule, this Court entered an Order (DE 17) requiring Defendant [*4] to notify the recipients of the subpoenas *duces tecum* that they should not produce any documents until further notice and that if Defendant had already received any documents pursuant to the subpoenas, it should not inspect them until such time as the Court has ruled on the instant Motion.

## II. DISCUSSION

Plaintiffs move to quash the subpoenas *duces tecum* directed to their former employers on the grounds that the documents sought by the subpoenas are not relevant and that the document request is overbroad. [3] In opposition, Defendant first argues that Plaintiffs lack standing to bring a motion to quash subpoenas directed to third-parties.

> 3    Plaintiffs also object on the ground that the subpoenas seek their confidential, personal information. However, "it is well settled that confidentiality does not act as a bar to discovery and is generally not grounds to withhold documents from discovery. Confidentiality concerns in many cases may be addressed with an appropriate protective order." *Dean v. Anderson, No. 01-2599-JAR, 2002 U.S. Dist. LEXIS 11536, 2002 WL 1377729, at*2 (D. Kan. June 6, 2002)* (citations omitted).

### A. Standing

Generally, an individual does not have standing to challenge a subpoena served on another, unless [*5] that individual has a personal right or privilege with respect to the subject matter of the subpoena. See *Washington v. Thurgood Marshall Academy, 230 F.R.D. 18, 22 (D.C. Cir. 2005)* ("[A]bsent a privilege, personal interest, or proprietary interest, [a party] has no standing to seek to quash, under *Federal Rule of Civil Procedure ("Rule") 45*, a subpoena issued to a non-party."); *Stewart v. Mitchell Transport, No. 01-2546-JWL, 2002 U.S. Dist. LEXIS 12958, 2002 WL 1558210, *at 1 (D. Kan. July 11, 2002)* (party does not have standing to quash subpoena served on another except where party has a personal right or privilege with respect to the subject matter requested in the subpoena); *Stevenson v. Stanley Bostitch, Inc., 201 F.R.D. 551, 555 (N.D. Ga. 2001)* ("[I]t appears to be the general rule of the federal courts that a party has standing to challenge a subpoena when she alleges a 'personal right or privilege with respect to the materials subpoenaed.'") (quoting *Brown v. Braddick, 595 F.2d 961, 967 (5th Cir.1979)); Smith v. Midland Brake, Inc., 162 F.R.D. 683, 685 (D. Colo. 1993)* ("A motion to quash ... a subpoena duces tecum may only be made by the [individual or entity] to whom the subpoena is directed except where [*6] the [individual] seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena.").

In considering whether a party had standing to move to quash a subpoena *duces tecum*, courts have repeatedly found that an individual possesses a personal right with respect to information contained in employment records and, thus, has standing to challenge such a subpoena. See, e.g., *Chamberlain v. Farmington Sav. Bank, No. 3:06CV01437 (CFD), 2007 U.S. Dist. LEXIS 70376, 2007 WL 2786421, at *1 (D. Conn. Sept. 25, 2007)* ("The plaintiff clearly has a personal right with respect to information contained in his employment records."); *Richards v. Convergys Corp., No. 2:05-CV-00790-DAK; 2:05-CV-00812 DAK, 2007 U.S. Dist. LEXIS 9131, 2007 WL 474012, at *1 (D. Utah Feb. 7, 2007)* (finding that a party had standing to challenge subpoenas seeking employment records from the party's current employer and a company that had made a job offer); *Stewart, 2002 U.S. Dist. LEXIS 12958, 2002 WL 1558210, at *2* ("The Court finds that [the defendant] clearly has a personal right with respect to the information contained in his personnel files, job applications, and performance evaluations. Thus . . . [the defendant] has standing to move to quash [*7] the subpoenas served on his employers and to assert objections to the document requests contained therein."); *Beach v. City Olathe, Kansas, No. 99-2210-GTV, 2001 U.S. Dist. LEXIS 16214, 2001 WL 1098032, at*1 (D. Kan. Sept. 17, 2001)* (defendant "clearly has a 'personal

right' in his personnel file and applications for employment that would give him standing to move to quash the subpoenas"); see also *Thurgood Marshall,230 F.R.D. at 24* (declining to consider standing for quashing subpoenas for employment records where party had alternatively moved for protective order; analyzing challenge to subpoenas under *Rule 26* standards); *Chamberlain, 2007 U.S. Dist. LEXIS 70376, 2007 WL 2786421, at * 1* (In addition to having standing to move to quash a *Rule 45* subpoena *duces tecum* seeking employment records from a former employer, defendant also had "standing to challenge the subpoenas on the basis of his having moved for a protective order pursuant to *Rule 26*."); *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc., 231 F.R.D. 426, 429 (M.D. Fla. 2005)* (finding that party did not have standing to move to quash a subpoena, but holding that the party nonetheless had standing to challenge the relevancy of documents sought by subpoena, thus, deeming the motion **[*8]** to quash as a motion for protective order under *Rule 26*).

This Court agrees with the decisions holding that a party does have a personal right with respect to information contained in their employment records. Here, Defendant has sought all records pertaining to Plaintiffs' former employment. These records likely contain highly personal and confidential information, such as social security numbers, medical information protected from disclosure under various federal and state laws, payroll information, income tax information, and information about family members. Therefore, Plaintiffs' personal right to the employment records is sufficient to confer standing to move to quash the subpoenas *duces tecum*. Accordingly, the Court will now consider Plaintiffs' arguments advanced in support of their Motion to Quash - irrelevancy and overbreadth.

B. Irrelevancy and Overbreadth

*Rule 45* does not list irrelevance or overbreadth as reasons for quashing asubpoena. Courts, however, have held that the scope of discovery under a subpoena is the same as the scope of discovery under *Rule 26*. See, e.g., *Chamberlain, 2007 U.S. Dist. LEXIS 70376, 2007 WL 2786421, at *1* ("It is well settled that the scope of discovery under a *Rule 45* subpoena **[*9]** is the same as that permitted under *Rule 26*."); *Stewart, 2002 U.S. Dist. LEXIS 12958, 2002 WL 1558210, at *3* (same); see also Advisory Committee Note to the 1970 Amendment of *Rule 45(d)(1)* (the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to *Rule 34* and other discovery rules."); 9A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, § 2459 (2d ed. 1995) (*Rule 45* subpoena incorporates the provisions of *Rules 26(b)* and *34*). The Court, therefore, must determine whether the subpoenas *duces tecum* at issue seek irrelevant information and/or are overly broad under the same standards set forth in *Rule 26(b)* and as applied to *Rule 34* requests for production. See *Wagner v. Viacost.com, No. 06-81113-Civ, 2007 U.S. Dist. LEXIS 47211, 2007 WL 1879914 (S.D. Fla. June 29, 2007)* (Ryskamp, J.) (applying relevance standard of *Rule 26(b)* to subpoena *duces tecum* seeking employment records from the plaintiff's current employer in deciding such records were not relevant in a FLSA case).

*Rule 26(b)(1)* provides in pertinent part that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any parties claim or defense. . . . For good cause, the court **[*10]** may order discovery of any matter relevant to the subject matter involved in the action." Further, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissibleevidence." [4] *Fed. R. Civ. P. 26(b)(1)*. Judge Ryskamp of this District recently explained the burden of establishing relevancy:

> When discovery appears relevant on its face, the party resisting the discovery has the burden to establish facts justifying its objections by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under *Fed.R.Civ.P. 26(b)(1)* or *(2)* is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

*Wagner, 2007 U.S. Dist. LEXIS 47211, 2007 WL 1879914, at *1* (citing *Scott v. Leavenworth Unified Sch. Dist. No. 453, 190 F.R.D. 583, 585 (D. Kan. 1999)*); see also *Moore v. Chertoff, No. 00-953 (RWR)(DAR), 2006 U.S. Dist. LEXIS 31391, 2006 WL 1442447, at *2 (D.D.C. May 22, 2006)* (same); *Merrill v. Waffle House, 227 F.R.D. 467, 470-71 (N.D. Tex. 2005)* (same). "However, when relevancy is not apparent, the burden is on the party *seeking* discovery to show the relevancy **[*11]** of the discovery request." *Dean v. Anderson, No. 01-2599-JAR, 2002 U.S. Dist. LEXIS 11536, 2002 WL 1377729, at *2 (D. Kan. June 6, 2002)* (emphasis in original).

> 4    *Federal Rule of Evidence 401* defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Fed. R. Ev. 401*.

Plaintiffs argue that any records that their former employers may have relating to Plaintiffs' prior employment have no relevance to the issues in this case - whether Plaintiffs worked more than 40 hours a week without receiving overtime compensation and whether Defendant properly classified Plaintiffs' positions as exempt. Plaintiffs contend that "even a cursory review of the subpoenas indicates that they are not narrowly tailored to obtain relevant evidence." Motion at 6 (DE 16). Rather, the subpoenas seek, "without limitation, each and every record, including personal and financial information, that Plaintiffs' former employers have in their possession regarding the Plaintiffs." Motion at 5 (DE 16). According to Plaintiffs, "[g]iven the limited subject matter of this case, and the overly [*12] broad nature of the requests, the purpose of the . . . document requests appears to be . . . nothing more than a fishing expedition to harass Plaintiffs and to interfere with Plaintiffs' reputations in the financial services field, and to deter them and other potential plaintiffs from pursuing their claims in this case." Motion at 6 (DE 16).

The Court finds that the records of Plaintiffs' former employers do not appear relevant to the claims or defenses herein - whether Plaintiffs worked for Defendant more than 40 hours a week without receiving overtime compensation and whether Defendant properly classified Plaintiffs' positions as exempt from the FLSA overtime provisions. Accordingly, Defendant, as the party seeking discovery, must demonstrate the relevancy of the documents sought.

Defendant first argues that the records of Plaintiffs' former employers are relevant to its defense that Plaintiffs were exempt from the overtime provisions. "Whether an employee is exempt or non-exempt under the FLSA is determined by 'the duties actually performed by the employee.'" *Corrigan v. United States, 68 Fed. Cl. 589, 595 (2005)* (quoting *5 C.F.R. § 551.202(i)*). Defendant, however, has failed to explain [*13] how the records of Plaintiffs' prior employers are relevant to a determination of the duties performed by Plaintiffs (while employed by Defendant) or to any other consideration of exempt status. Defendant merely states that "courts have repeatedly considered a plaintiff's employment history in determining FLSA exempt status under the administrative, professional and executive exemptions - all of which have been asserted as defenses by MortageIT." Response at 6 (DE 35).

None of the cases cited by Defendant in support of this assertion [5] address the relevance or discoverability of a plaintiff's prior employment records; rather, each case was decided at the summary judgment, trial, or appellate stage and addressed whether plaintiffs were exempt from the overtime provisions of the FLSA. This Court has carefully reviewed these decisions and agrees with Plaintiffs that rather than "considering" the plaintiffs' employment history, the courts "just mentioned the employment history in passing." Reply at 3 (DE 35). A close reading of these cases reveals that in each instance the court based its determination of exempt status on its examination of the plaintiff's job duties with the defendant employer; [*14] the plaintiff's employment history was not necessary to the court's decision. [6]

5   *Smith v. Jackson, 954 F.2d 296, 298 (5th Cir. 1992); Corrigan v. United States, 68 Fed. Cl. 589, 595 (2005); Adams v. United States, 65 Fed. Cl. 195, 212 (2005); Havey v. Homebound Mortgage, Inc., No. 2:02-CV-313, 2005 U.S. Dist. LEXIS 27036, 2005 WL 1719061, at *5-6 (D. Vt. July 21, 2005); Aulen v. Triumph Explosive, Inc., 58 F. Supp. 4 (D. Md. 1944)*

6   For example, in Havey, 2005 U.S. Dist. LEXIS 27036, 2005 WL 1719061, the case on which Defendant primarily relies, the issue before the court in deciding partial summary judgment was whether the plaintiffs' work for the defendant employer included the exercise of discretion or independent judgment so as to meet the FLSA administrative employee exemption. The plaintiffs in that case argued that no discretion or independent judgment was involved and that the work was automatic and required only a high school education. The Havey Court stated:

> Although Plaintiffs emphasize their lack of higher education and irrelevant work experience, both were experienced with mortgage processing when they were hired by Homebound. Havey worked as a mortgage loan processor at National City Bank in Columbus, Ohio immediately prior to being [*15] hired by Homebound . . . . Anderson worked at Chittenden Bank in the mortgage department for nineteen years, including a couple years as an underwriter.

2005 U.S. Dist. LEXIS 27036, [WL] at *6. In rejecting the plaintiffs' arguments, the court noted their prior employment, but then proceeded to decide exempt status solely on the duties of the plaintiffs' positions while employed by the defendant.

Defendant also cites *Smith, 954 F.2d 296*, parenthetically stating that the court "review[ed] Plaintiff's employment history in deciding exempt

status under the administrative and executive positions." Response at 6 n.3. But, in considering an appeal of a jury verdict finding that the plaintiffs were not exempt employees, the Fifth Circuit did not "review" the plaintiff's employment history at all; it reviewed only the duties of the plaintiffs while employed by the defendant. Indeed, the appellate court's only mention of "employment history" occurred in setting out the standard of review: "Although historical facts regarding the employment history, and inferences based on these facts are reviewed under the factual standard, the ultimate decision whether an employee is exempt is a question of law." *Id. at 298.*

Even were the **[\*16]** court able to find that Plaintiffs' prior employment history is marginally relevant to their exempt status, the subpoenas *duces tecum* at issue are overly broad on their face. They seek "any and all documents, files and records, reflecting or relating to the employment" of each Plaintiff and opt-in Plaintiff, "including but not limited to job application(s), personnel file, interview notes, performance evaluations, termination or resignation notices, payroll records, income tax forms, and any other personnel documents including, but not limited to those maintained by the Human Resources department." Subpoenas (DE 16-2). See *Richards, 2007 U.S. Dist. LEXIS 9131, 2007 WL 474012, at \*4-5* (quashing overbroad subpoena *duces tecum* directed to the plaintiff's former employer that sought "all documents in your possession or control regarding the employment of" the plaintiff).

Defendant next contends that all Plaintiffs have brought lawsuits against at least one prior employer (arguing misclassification under the FLSA), including one collective action in which the three Plaintiffs here sued a mortgage company. Defendant, therefore, argues that Plaintiffs' employment records of former employers are relevant to assess Plaintiffs'credibility **[\*17]** "in reference to their prior litigation." Response at 8 (DE 35). Plaintiffs acknowledge that credibility is an issue in every case, but they counter that Defendant should be required to demonstrate a good faith basis for Plaintiffs' lack of credibility before it is permitted to obtain the records, "[o]therwise there would be virtually no limits on discovery once a party invokes the mantra of 'credibility' as the basis for a discovery request." Reply at 5 (DE 40). The Court agrees, as have other courts. See, e.g., *Chamberlain, 2007 U.S. Dist. LEXIS 70376, 2007 WL 2786421, at \*3; Premer v. Corestaff Servs, L.P., 232 F.R.D. 692, 693 (M.D. Fla. 2005)* (refusing to require production of employer's employment records from the plaintiff's prior employer pursuant to an overbroad subpoena where defendant had failed to provide any reason to suspect plaintiff's credibility). In Chamberlain, an em-

ployment discrimination case, the defendant issued notice of its intent to serve subpoenas *duces tecum* on the plaintiff's former employers; the subpoenas sought all employment records pertaining to the plaintiff, including his personnel file. The defendant argued, *inter alia*, that the information contained in the plaintiff's prior **[\*18]** employment records was relevant to his credibility as a witness. In rejecting this argument, the court stated that "the defendant has not alleged any reason to believe that the plaintiff has misrepresented information during the course of this litigation with regard to his previous employment to substantiate such a broad search of his employment records on this ground." *2007 U.S. Dist. LEXIS 70376, 2007 WL 2786421 at \*3.*

Finally, Defendant argues that Plaintiffs' employment records are relevant because "if Plaintiffs' prior employers, who are engaged in the financial services and mortgage industries, classified the same or similar positions held by Plaintiffs as exempt, any claimof willful FLSA violations is critically undermined." Response at 8 (DE 35). In support of this argument, Defendant relies solely on *Bennett v. SLT/TAG Inc., No. Civ. CV02-65-HU, 2003 U.S. Dist. LEXIS 25434, 2003 WL 23531402, at \*9 (D. Or. May 8, 2003).*

The FLSA plaintiff in Bennett sought not only unpaid overtime wages, but also liquidated damages. In deciding whether liquidated damages were warranted, the court was required to determine whether the defendant employer's failure to pay overtime was in good faith and whether it had reasonable grounds for believing that **[\*19]** it had not violated the FLSA. In making its decision as to the defendant's good faith, the court considered the testimony of the defendant's payroll manager; she stated that she understood the industry standard was to classify finance and insurance managers as exempt under the FLSA automobile or retail exemption. *Bennett*, therefore, does not stand for the proposition that other employers' classification of a position as exempt is relevant to show that a defendant employer properly classified a same or similar position as exempt, as Defendant appears to contend. Rather, the Bennett Court considered the testimony of the defendant's own employee as to the industry standard because it pertained to the reason that the defendant had made the exempt classification and whether that reason was sufficient to show that the defendant had acted in good faith and had reason to believe that it was not violating the FLSA. As Plaintiff here points out, "classification decisions are to be made on the actual job duties and responsibilities of the position at issue, and not on what jobs the person holding that position may have had in the past." Reply at 3 (DE 40).

Alternatively, if Defendant is attempting **[\*20]** to argue that it acted in good faith (for liquidated damages purposes) when it classified Plaintiffs' positions as ex-

empt becausePlaintiffs' (same or similar) prior positions with former employers had been classified as exempt, then Defendant has no need for Plaintiffs' prior employment records. In determining whether liquidated damages are warranted, the relevant consideration would be what Defendant knew or believed at the time it determined Plaintiffs' positions were exempt, not whether Plaintiffs' prior employers actually classified the same or similar position as exempt.

## III. CONCLUSION

Based on the foregoing, the Court finds that Defendant has failed to meet its burden of establishing that the documents sought by the subpoenas *duces tecum* directed to Plaintiffs' former employers are relevant to any claim or defense herein. Moreover, the document requests of the subpoenas are overly broad on their face. Accor-

dingly, Plaintiffs' Motion to Quash Subpoenas to Non-Parties, or in the Alternative, Motion for Protective Order (DE 16) is GRANTED and the subpoenas duces tecum directed to the former employers of Plaintiffs and opt-in Plaintiffs are QUASHED. [7]

> 7 If Defendant has already received [*21] any documents pursuant to these subpoenas, it shall return them to the employer that produced them, without first inspecting or copying the documents.

DONE AND ORDERED in Fort Lauderdale, Florida, this 10th day of December 2007.

/s/ BARRY S. SELTZER

United States Magistrate Judge

LEXSEE 1998 US DIST LEXIS 11634

**ELIZABETH CONROD, Plaintiff, -against- THE BANK OF NEW YORK, Defendant.**

**97 Civ. 6347 (RPP)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1998 U.S. Dist. LEXIS 11634*

**July 28, 1998, Decided
July 30, 1998, Filed**

**DISPOSITION:** [*1] Defense counsel's motion for reargument and reconsideration of sanctions denied.

**COUNSEL:** For Plaintiff: Rachel J. Minter, Esq., New York, NY.

For Defendant: Kevin J. Walsh, Esq., Kelley Drye & Warren LLP, New York, NY.

Kevin J. Walsh, Esq., Defendant, Pro Se, New York, NY.

**JUDGES:** ROBERT P. PATTERSON, JR., U.S.D.J.

**OPINION BY:** ROBERT P. PATTERSON, JR.

**OPINION**

### OPINION AND ORDER

#### ROBERT P. PATTERSON, JR., U.S.D.J.

Defendant's counsel moves for reargument and re-consideration of this Court's order, rendered from the bench on April 6, 1998, sanctioning counsel for the defendant and imposing a fine in the amount of $ 1,000.00. For the following reasons this motion is denied.

#### *Background*

On April 2, 1998, the parties appeared before the Court regarding confidentiality issues raised by personal counsel to Robert Morena ("Morena"), a former employee of defendant. Morena's concern, in part, related to the possible negative consequences that would flow from the defendant's representatives advising his present employer of plaintiff's allegations against him. The Court made known its concern that Morena's employment

might be jeopardized and directed defense counsel to draft a confidentiality [*2] agreement to protect Morena in accordance with an agreement reached in Court on March 24, 1998. [1] That same afternoon, on April 2, 1998, without having entered into the confidentiality agreement, defense counsel served a third-party subpoena on plaintiff's current employer, Fred Alger Management, Inc., without any notification to plaintiff's counsel. In response to an April 2, 1998 emergency letter motion from plaintiff's counsel, the Court quashed the subpoena and ordered the parties to appear at a hearing on April 6, 1998.

> 1 Counsel for Morena participated in the Court conference via telephone.

At the April 6, 1998 hearing, the Court imposed sanctions on defense counsel for the conduct and manner in which it conducted this discovery. (Transcript of April 6, 1998 Hearing before Patterson, J. ("Tr.") at 19.) Specifically the Court found that in view of their awareness of the Court's concern regarding employment relationships and their obligation to give prior notice to plaintiff's counsel, defense counsel should [*3] not have served a subpoena on plaintiff's employer, potentially jeopardizing her employment relationship, without first having completed the confidentiality agreement, and attempting to obtain previously requested documents from plaintiff voluntarily or by way of a motion to compel (*id.*).

#### *Discussion*

The standards controlling the reconsideration or reargument of a motion are set forth in Rule 6.3 (formerly Rule 3(j)) of the Local Rules of the Southern District of New York. Under Rule 6.3 reconsideration is appropriate only if "the Court overlooked controlling

decisions or factual matters 'that might materially have influenced its earlier decision.'" *Herman Miller, Inc. v. Worth Capital, Inc., 1998 U.S. Dist. LEXIS 6275*, *1, 97 Civ. 7878 (SAS), 1998 WL 226202, at *1 (S.D.N.Y. May 4, 1998) (quoting *Anglo American Ins. Co. v. Calfed, Inc., 940 F. Supp. 554, 557 (S.D.N.Y. 1996)). See also Paredes-Ravelo v. United States, 1998 U.S. Dist. LEXIS 5473, 96 Civ. 3680 (JFK), 1998 WL 185324 at *1* (S.D.N.Y. April 17, 1998). The party moving for reargument must identify specific facts which the court purportedly overlooked, and may not advance new facts, issues or arguments which were not previously heard before the court. *See* **[\*4]** *Bank Leumi Trust Co. of New York v. Istim, Inc., 902 F. Supp. 46, 48 (S.D.N.Y. 1995)*. Rule 6.3 is to be "narrowly construed and strictly applied to avoid repetitive arguments on issues that have been considered by the court." *Anglo American Ins. Group v. Calfed Inc., XCF, 940 F. Supp. 554, 557 (S.D.N.Y 1996)* (internal citation omitted).

Defense counsel neither conferred with the Court nor plaintiff's counsel before issuing a broad subpoena to plaintiff's current employer, in blatant disregard of *Federal Rules of Civil Procedure 26(g)* and *45(c)* and Local Rule 37.2, all of which are aimed at curbing discovery abuse by parties to resolve their differences in conference prior to issuing a motion to compel or for a protective order. [2] Defense counsel served the subpoena in spite of being apprised of the Court's concerns about the nature of legal claims becoming known to a person's current employer and the effects of that information on a person's current and future employment prospects, at the conference on Morena's motion for a protective order held the very morning before the subpoena was served. (Transcript of April 2, 1998 Hearing before Patterson, J.). By issuing a subpoena **[\*5]** to plaintiff's current employer, defense counsel caused plaintiff to worry about her continued employment relationship, in a manner amounting to harassment. Because of the direct negative effect that disclosures of disputes with past employers can have on present employment, subpoenas in this context, if warranted at all, should be used only as a last resort. "The spirit of [26(g)] is violated when discovery is used as a tactical weapon rather than to explore a party's claims and the facts connected therewith." *In re Weinberg, 163 B.R. 681, 684 (Bankr. E.D.N.Y. 1994)* (internal citation omitted). The same is true with respect to third-party subpoenas issued in the early discovery phase of a discrimination litigation.

2 Subdivision (g) was added to *Rule 26* in order to "impose[] an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of *Rules 26 through 37* . . . .[It] provides a deterrent to both excessive discovery and evasion by impos-

ing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request. . ." *Fed.R.Civ.P. 26* advisory committee's 1983 note.

**[\*6]** Defense counsel has failed to meet its burden of showing that the Court overlooked any matter of law or fact which would have altered the basis on which sanctions were imposed. The new cases cited by defense counsel are inapposite. [3] Defense counsel also claims that the Court overlooked the fact that, in response to defendant's first request for document production relating to plaintiff's current employment, plaintiff produced only a single document and made no objections or claims of privilege regarding other documents. Therefore, it asserts, it was reasonable to conclude that further documents would only be available through the issuance of the subpoena in question (Defense Counsel's Mem. at 2). This claim was raised and considered by the Court at the April 6, 1998 Hearing (Tr. 3-12), and is also unavailing. Defense counsel issued its overly broad subpoena without first consulting with plaintiff or the Court, and without first completing the confidentiality agreement which it had agreed to draft. [4]

3 For example, in *Chazin v. Lieberman*, cited by defense counsel, this Court found that an individual's privacy interests could be overcome, in some circumstances by an opposing party's need for information, justifying the issuance of a subpoena. *Chazin v. Lieberman, 129 F.R.D. 97 (S.D.N.Y. 1990)*. However, this Court, in imposing sanctions, was well aware of this principle of discovery (Tr.16, 19). The issue here is that defense counsel issued such a subpoena without adequately first attempting to obtain the information it sought through other means, and without first completing the confidentiality agreement which it had agreed to draft.

**[\*7]**

4 Defense counsel claims that it needed documents from plaintiff's current employer prior to deposing the plaintiff in order to evaluate her claims that her new position paid her less salary and benefits than the position she claims to have been constructively discharged from. However, such information might have been obtained from plaintiff by means of a motion to compel production of the relevant documents, and defense counsel has failed, to date, to explain the relevance of documents requested relating to "attendance," "evaluations," and "discipline" to plaintiff's activities while its employee.

***Conclusion***

For the foregoing reasons, defense counsel's motion for reargument and reconsideration of sanctions is denied.

IT IS SO ORDERED

Dated: New York, New York

July *28*, 1998

Robert P. Patterson, Jr.

U.S.D.J.

LEXSEE 2003 US DIST LEXIS 27412

**VIRGINIA GAMBALE, Plaintiff, - against - DEUTSCHE BANK AG and BANK-ERS TRUST COMPANY, Defendants.**

**02 Civ. 4791 (HB) (DFE)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2003 U.S. Dist. LEXIS 27412*

**January 8, 2003, Decided
January 10, 2003, Filed**

**SUBSEQUENT HISTORY:** Later proceeding at *Gambale v. Deutsche Bank AG, 2003 U.S. Dist. LEXIS 11180 (S.D.N.Y., July 2, 2003)*

**PRIOR HISTORY:** *Gambale v. Deutsche Bank AG, 2002 U.S. Dist. LEXIS 22931 (S.D.N.Y., Nov. 19, 2002)*

**COUNSEL:** [*1] For Virginia Gambale, Plaintiff: Judith P. Vladeck, LEAD ATTORNEY, Vladeck, Waldman, Elias & Engelhard, P.C., New York, NY.

For Deutsche Bank AG, Bankers Trust Company, Defendants: Claudia Mindy Cohen, LEAD ATTORNEY, Epstein, Becker & Green, P.C. (New York), New York, NY; Robert J. Nobile, LEAD ATTORNEY, Seyfarth, Shaw, Fairweather & Geraldson, New York, NY; Ronald M. Green, LEAD ATTORNEY, Epstein, Becker & Green, P.C., New York, NY.

**JUDGES:** DOUGLAS F. EATON, United States Magistrate Judge.

**OPINION BY:** DOUGLAS F. EATON

**OPINION**

MEMORANDUM AND ORDER

DOUGLAS F. EATON, United States Magistrate Judge.

In this gender discrimination case, Judge Baer ordered that all discovery must be commenced in time to be completed by January 17, 2003. The Amended Complaint, dated July 11, 2002, alleges various acts of discrimination, including denials of promotion in 1999 and 2002, and a meeting on January 10, 2002 at which a superior allegedly told plaintiff that she should look for

new employment opportunities outside of Deutsche Bank during the next nine months. This allegation is denied, and she is still employed by the defendants. At her deposition on November 4, 2002, plaintiff testified that [*2] she has spoken with many executive search firms over the past two years, and she identified five of them. Forty-five days later, on the evening of December 19, 2002, plaintiff's counsel received a letter from defense counsel enclosing five subpoenas addressed to the custodians of records at the five search firms. Defense counsel said they intended to serve these on or after December 23, but agreed to refrain from serving them while the parties prepared a joint letter to me.

I reviewed the ensuing joint letter, dated January 3, and on that date I held a telephone conference. I have now reviewed a January 7 letter from plaintiff (enclosing all documents in her possession concerning her contacts with the five search firms) and a January 8 letter from defendants.

Plaintiff asks me to preclude the defendants from serving subpoenas on the search firms. She says these subpoenas are not reasonably calculated to lead to the discovery of admissible evidence. Moreover, she says that the search firms would be less inclined to work with her if they are dragged into this litigation. She cites Judge Patterson's decision in *Conrod v. Bank of New York, 1998 U.S. Dist. LEXIS 11634 (S.D.N.Y. July 30, 1998)*. [*3] In that case, defense counsel subpoenaed the plaintiff's current employer without conferring with plaintiff's counsel or Judge Patterson, and that was clearly a major reason why he imposed a $ 1,000 fine on defense counsel. In the case at bar, defense counsel very properly gave advance notice. On the other hand, Judge Patterson also attacked the substance of the subpoena. He noted "the direct negative effect that disclosures of disputes with past employers can have on present employ-

ment," and he also expressed his concerns about the effects "on a person's current and future employment prospects." By necessary implication, Judge Patterson ruled that plaintiff Conrod had standing to object to such a subpoena.

In the joint letter to me, at pages 9 to 10, the defendants attempt to distinguish the five search firms from a current or prospective employer. The defendants speculate that each of the search firms is already aware of plaintiff's lawsuit. In any event, they contend that the substantial fee that a search firm could earn from placing plaintiff would outweigh any negative views caused by learning about her lawsuit or caused by the burden of complying with [*4] the subpoenas. On the other hand, the subpoenas are very broad. (See Exh. B to the 1/3/03 joint letter.) A search firm would probably find it an intrusive burden to produce its notes of all communications with plaintiff or with prospective employers on her behalf. Also, 2003 is a difficult time to be looking for a executive position, and I cannot lightly dismiss plaintiff's worry about anything that might cause a search firm with a good "lead" to offer it to another client rather than to her.

For me, the dispositive factor here is the weakness of the defendants' claims as to relevance. Although they have her detailed resume, they speculate that the search firms may possess some other sort of document describing "what she told the Search Firms about her skill set and qualifications." (1/8/03 letter at p. 2.) The defendants are hoping that maybe "plaintiff admitted to any headhunter that as of the end of 2001 she had less than two years experience, if that, as an actual venture capitalist

and/or banker." (Id. at pp. 2-3.) I find this extremely unlikely. The defendants also assert that it is important for them to learn "when plaintiff first engaged the services of [each of] the Search [*5] Firms." (Id. at p. 2.) This seems to have very limited relevance, since she has testified that she has spoken with many search firms, both before and after January 2002.

Under all the circumstances, I find that subpoenas to any of the search firms would subject plaintiff to unnecessary annoyance and embarrassment within the meaning of *Rule 26(c), F.R.Civ.P.* I quash the subpoenas, but I direct plaintiff to supply the defendants, by January 15, 2003, with an affidavit identifying each executive search firm that she contacted during 2001 or 2002. For each such search firm, she must give, to the best of her knowledge, the date when she first engaged the services of the firm; if she is unsure of the date, I direct her to telephone the firm, ask for the firm's best information as to the date, and mention this in the affidavit. (Such a telephone call would be innocuous; on the other hand, I reject the defendants' fall-back request that I order plaintiff to ask each search firm for all its notes and documents concerning her.) I direct the defendants not to contact any of the search firms unless the defendants obtain advance approval from Judge Baer.

[*6] DOUGLAS F. EATON

United States Magistrate Judge

Dated: New York, New York

January 8, 2003

LEXSEE 2006 US DIST LEXIS 36774

**SARAH MAXWELL, Plaintiff, vs. HEALTH CENTER OF LAKE CITY, INC., Defendant.**

**Case No. 3:05-cv-1056-J-32MCR**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION**

*2006 U.S. Dist. LEXIS 36774*

**June 6, 2006, Decided**

**COUNSEL:** [*1] For Sarah Maxwell, Plaintiff: Philip Daniel Williams, Magid & Williams, P.A., Jacksonville, FL.

For The Health Center of Lake City, Inc., Defendant: Weston F. Smith, Deacon & Moulds, P.A., St. Petersburg, FL.

**JUDGES:** MONTE C. RICHARDSON, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** MONTE C. RICHARDSON

**OPINION**

**ORDER**

**THIS CAUSE** is before the Court on the Amended Motion to Quash and/or Motion for Protective Order (Doc. 16) filed by Plaintiff on May 10, 2006. Defendant filed its response to the motion on May 19, 2006 (Doc. 19). Accordingly, the motion is now ripe.

**I. BACKGROUND**

This is an action alleging race discrimination, racial harassment, and retaliation in violation of the Civil Rights Act of 1886, as amended by the Civil Rights Act of 1991, *42 U.S.C. § 1981, et seq.,* and Title VII of the Civil Rights Act, *42 U.S.C. § 2000e, et seq.,* and alleging unlawful discrimination and retaliation in violation of the Florida Civil Rights Act of 1992, *Fla. Stat. 760, et seq.,* and *Fla. Sta. 440.205,* respectively. (Doc. 10). Plaintiff seeks relief in the form of economic damages, back pay, front pay, compensatory and [*2] emotional distress damages, injunctive relief, prejudgment interest, reimbursement for attorney's fees and costs, punitive damages and any other relief the court deems just and appropriate. Id. On February 10, 2006, the Court entered a scheduling

order setting the discovery deadline for September 15, 2006. (Doc. 11). The parties are currently engaged in the discovery process and on April 25, 2006, Defendant served Plaintiff with a Notice of Production from Non-Party with attached subpoenas directed to six employers with whom Plaintiff was previously employed prior to working for Defendant. (Doc. 16, pp. 1-2).

The proposed subpoenas request Plaintiff's entire personnel file from each of these prior employers. (Doc. 16, Ex. 2). Plaintiff objected to the Notice of Production from Non-Party by filing this Motion. On May 10, 2006, this Court asked Defendant to refrain from serving the subpoenas, if it had not already done so, until this issue is resolved. (Doc. 15). On May 19, 2006, Defendant filed its opposition to Plaintiff's motion and stated that it had not yet served the subpoenas and it would not issue them until a ruling has been made by this Court. (Doc. 19, p. 2, fn. 2).

[*3] In the instant motion, Plaintiff asks the Court to either quash the subpoenas or enter a protective order because the Defendant is seeking to discover evidence that is not admissible nor reasonably calculated to lead to the discovery of admissible evidence. (Doc. 16). Additionally, Plaintiff argues Defendant is embarking on an unlawful fishing expedition in an effort to discover evidence of wrongful conduct on the part of Plaintiff, Id. Defendant, on the other hand, claims that the personnel files are relevant to the issues at hand. (Doc. 19). Specifically, it argues, the subpoenas are "reasonably calculated to lead to admissible evidence as to work history, wage history, prior complaints of the nature Plaintiff is alleging against Defendant, and medical information relevant to Plaintiff's alleged damages for emotional distress." (Doc. 19, p. 6). Defendant further states that in addition to seeking relevant evidence pertaining to the aforementioned topics, it is possible that discovery of the Plain-

tiff's personnel files may lead to after acquired evidence.
Id.

## II. ANALYSIS

Plaintiff brings her motion pursuant to *Rules 45* and *26* of the Federal Rules of Civil Procedure. **[\*4]** As such, the Court will briefly discuss each Rule.

### A. *Fed. R. Civ. P. 45*

Ordinarily a party does not have standing to quash a subpoena served on a third party[1] unless the party seeks to quash based on a personal right or privilege relating to the documents being sought. See *Florida ex rel. Butterworth v. Jones Chems., Inc., 148 F.R.D. 282, 1993 WL 388645 at \*2 (M.D.Fla. 1993)* ("[g]enerally, it is the person to whom a subpoena is directed who has standing to seek a motion to quash"); *Stevenson v. Stanley Bostitch, Inc., 201 F.R.D. 551, 555 n. 3 (N.D.Ga. 2001)* ("a party has standing to challenge a subpoena when she alleges a 'personal right or privilege with respect to the materials subpoenaed'"). Here, Plaintiff argues that she is asserting a personal right in that Defendant is seeking her personnel files, which are by their very nature confidential, from six of her prior employers.

> 1 Defendant inadvertently cited to the Florida Rules of Civil Procedure in its Notice of Production from Non-Party, however, Defendant recognizes that this was a technical error and if given the opportunity, it would correct the mistake and issue the subpoenas for non-party pursuant to *Fed. R. Civ. P. 45*.

**[\*5]** "Personnel files and records and [sic] are confidential in nature and . . . in most circumstances, they should be protected from wide dissemination. *Williams v. Bd. of County Comm'rs, 2000 U.S. Dist. LEXIS 1311, No. Civ. A. 98-2485-JTM, 2000 WL 133433, at \*1 (D. Kan. Jan. 21, 2000)* (citations omitted). When, however, a Plaintiff brings a claim for discrimination and seeks damages for emotional distress, Plaintiff may have waived some of her privacy interests. See e.g., Brady v. Central Indiana Regional Blood Center, No. 1:99-MC-19, 1999 WL 33912610, \*1 (N.D. Ind. Oct. 6, 1999) (stating that by bringing a Title VII claim of harassment or retaliatory discharge, the plaintiff waives most of her privacy interests). While it is arguable that Plaintiff has standing to object to the non-party subpoenas based on her personal right regarding the materials subpoenaed, the Court notes that she may have waived such rights by the very nature of her allegations against Defendant. Nevertheless, the Court does not need to decide whether Plaintiff has standing under *Rule 45* at this time because Plaintiff also asserts *Rule 26* as a basis for seeking a protective order. Because it is clear **[\*6]** that Plaintiff has standing under *Rule 26*, the Court will analyze this motion pursuant to the applicable standards set forth by *Rule 26*.

### B. *Fed. R. Civ. P. 26*

*Rule 26(c)* provides that "upon motion by a party. . . and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. "*Fed. R. Civ. P. 26(c)*. The party seeking the protective order has the burden to demonstrate good cause. Id. In determining whether good cause exists, the federal courts have created their own balancing of interests approach. See *Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1313 (11th Cir. 2001)* ("Federal courts have superimposed a balancing of interests approach for *Rule 26*'s good cause requirement.") (citations omitted). Thus, this Court must balance Defendant's interest in obtaining Plaintiff's personnel files against Plaintiff's interest in keeping the files confidential. See *id.* Moreover, since this matter concerns non-parties, the Court should also consider **[\*7]** the interests of the non-parties and whether Defendant can obtain the information it requests from another source.

As noted above, Plaintiff argues that Defendant does not seek evidence which will be admissible or reasonably calculated to lead to the discovery of admissible evidence. The scope of discovery is governed by *Rule 26*, which permits the parties to "obtain discovery regarding any matter, not privileged, which is relevant to the subject claim or defense of any party." *Fed. R. Civ. P. 26(b)(1)*. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. The term "relevant" should be "'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case.'" *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc., 231 F.R.D. at 430* (quoting, *Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L. Ed. 2d 253 (1978))*.

Courts have discretion, however, to limit discovery when such discovery is, *inter alia,* unreasonably **[\*8]** cumulative or obtainable from some other source that is more convenient, less burdensome, or less expensive. *Fed. R. Civ. P. 26(b)(2)*. Courts may also limit discovery in an effort to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. *Fed. R. Civ. P. 26(c)*.

Here, Defendant is requesting Plaintiff's entire personnel files from six of her prior employers. Defendant claims that these documents may lead to admissible evidence in that they may lead to evidence of "Plaintiff's

work history, wage history, prior complaints of the nature Plaintiff is alleging against Defendant, and medical information relevant to Plaintiff's alleged damages for emotional distress." (Doc. 19, p. 6).

The Court finds that while some of the documents in Plaintiff's personnel files may reasonably lead to admissible evidence, the blanket requests for her entire personnel file are overly broad. Consequently, the Court will grant Plaintiff's motion for a protective order and thus, Defendant is prohibited from seeking discovery pursuant to the subpoenas. Defendant may, however, redraft subpoenas [*9] which are more limited in scope and which appear to be reasonably calculated to lead to the discovery of admissible evidence. Because this Court finds some of the evidence Defendant seeks is potentially relevant, it will address each of Defendant's arguments pertaining to the relevancy of the evidence it seeks to discover, in an effort to assist the parties and prevent further disputes on these issues.

### i. Prior Wage History & Damages

Defendant seeks salary and payroll history from each of Plaintiff's previous employers and states that "such records will provide a basis for damages in indicating Plaintiff's prior wage history." (Doc. 19, p. 4). Defendant's reasoning, however, is defective. While a former employee's subsequent salary is relevant to the issue of mitigation of damages, Defendant has failed to show why her prior salary has any relevance to damages. See *Graham v. Casey's General Stores, 206 F.R.D. 251, 255 (S.D. IN. 2002)* (granting the plaintiff's motion to quash after finding that Defendant failed to show why salary information from a previous employer is in any way relevant to damages under a discrimination claim). The Court agrees with Plaintiff [*10] and finds that Plaintiff's records showing her prior wage history are not relevant to the issue of damages. [2]

> 2   As an aside, even if such records were relevant, Defendant has made no showing that these records could not be obtained directly from Plaintiff.

### ii. Prior Work History

Defendant also argues that Plaintiff's personnel files will help it identify Plaintiff's prior work history, including any periods of unemployment. (Doc. 19, p. 5). Again, Defendant offers no explanation as to why Plaintiff's prior work history is relevant to this matter. Moreover, and as Plaintiff points out, her prior performance at her previous jobs is not reasonably calculated to lead to admissible evidence because *Fed. R. Evid. 404* would exclude such evidence. See *Neuren v. Adduci, Mastriani, Meeks & Schill, 310 U.S. App. D.C. 82, 43 F.3d 1507, 1511 (D.C. Cir. 1995)* (holding that district court erred in

admitting evidence of plaintiff's performance at a previous law firm because such evidence [*11] of a person's character was not admissible to prove Plaintiff acted in conformance therewith, under *Fed. R. Evid. 404*). Thus, this Court finds that documents showing Plaintiff's prior work history, including periods of unemployment, have no relevance on her performance or periods of unemployment during the time she was employed by Defendant. Moreover, Defendant fails to offer, and the Court cannot conjure, any additional likely explanations as to why such evidence could be relevant.

### iii. Emotional Distress Claims

Defendant further contends that it should be allowed to obtain information relating to Plaintiff's health insurance and/or medical information which could lead to evidence directly related to Plaintiff's claims of emotional distress based upon her allegations against Defendant. (Doc. 19, p. 5). This Court agrees with Defendant that discovery of this type of evidence may in fact lead to admissible evidence, however, in an effort to spare third parties the expense and cost of responding to the subpoenas, the Court finds that Defendant ought to first attempt to obtain such evidence directly from Plaintiff pursuant to other available [*12] avenues under the Federal Rules of Civil Procedure. Importantly, Defendant has not stated that it has tried to obtain such information directly from Plaintiff through other means. The Court urges the parties to attempt to work out these discovery issues amongst themselves before taking the more intrusive step of subpoenaing non-parties. If they are unable to do so, Defendant is not prevented from re-drafting subpoenas which are appropriately limited in scope.

### iv. Prior Complaints of Racial Discrimination, Harassment or Allegations of a Hostile Work Environment

Defendant asserts that it also seeks evidence relating to any prior complaints of racial discrimination, harassment or allegations of hostile work environs that Plaintiff may have raised at any of her prior places of employment. (Doc. 19, p. 5). If Plaintiff has previously filed frivolous claims, such information could weigh on her credibility and may be compelling enough to admit at trial. See *Graham v. Casey's General Stores, 206 F.R.D. at 256*; see also *Gastineau v. Fleet Mortg. Corp., 137 F.3d 490, (7th Cir. 1998)* (holding that evidence that plaintiff had sued three of his former employers [*13] was admissible to show plaintiff's motive, state of mind, credibility, modus operandi, and to cast doubt on plaintiff's claim for emotional damages). Consequently, the Court finds that evidence relating to potential prior complaints of discrimination, harassment or allegations could

be relevant and possibly admissible if the evidence shows such claims were frivolous.

### v. After Acquired Evidence

Finally, Defendant argues that Plaintiff's personnel files may provide information relevant to its after-acquired evidence defense. (Doc. 18, p. 5). While the Supreme Court has recognized that the after-acquired evidence defense can be used in certain instances to limit damages and remedies available, it also cautioned that employers should not, as a routine matter, undertake extensive discovery into an employee's background or performance to resist claims. *McKennon v. Nashville Banner Publ'g. Co., 513 U.S. 352, 360-63, 115 S. Ct. 879, 130 L. Ed. 2d 852 (1995).* [3] In fact, various courts have applied the McKennon reasoning to hold that although the after-acquired evidence doctrine can be used to limit an employee's remedies based on evidence found during discovery, it should not be used [*14] to independently initiate discovery. See e.g., *Premer v. Corestaff Services, L.P., 232 F.R.D. 692, 693 (M.D. Fla. 2005)* (explaining that although the after-acquired evidence doctrine provides employers a mechanism to limit an employee's remedies based on evidence found during discovery, it should not be used as an independent basis to initiate discovery"). Rather, Defendant must have some pre-existing basis to believe that after-acquired evidence exists before it can take on additional discovery. See Preston v. American Express Travel Related Servs. Co., Inc., Case No. 3:OOcv312-J-25TJC (2001) (citing *Naszke v. Federal Express Corp., 1996 U.S. Dist. LEXIS 1795 (N.D. Ill. 1996)*) (relying on the after-acquired evidence doctrine in part when it allowed the defendant to reopen discovery after defendant had found evidence of a disciplinary memorandum addressed to plaintiff). The Court finds that Defendant has failed to assert any pre-existing basis for the belief that after-acquired evidence of Plaintiff's wrongdoing exists. As such, Plaintiff

cannot use this doctrine to initiate discovery that is otherwise not relevant.

> 3   Although the McKennon case involved allegations of violations of the ADEA, the Eleventh Circuit has held that the holding of McKennon is also applicable to claims brought under Title VII. *Wallace v. Dunn Constr. Co., 62 F.3d 374, 378 (11th Cir. 1995).*

### [*15] III. CONCLUSION

Defendants requests for Plaintiff's personnel files from six of her prior employers are overly broad. Some of the information contained in these files may, however, be relevant. Consequently, this Court will grant Plaintiff's motion for a protective order. The parties are encouraged to confer and attempt to agree on some of the issues Defendant seeks to discover. Moreover, Defendant should attempt to obtain as much of the evidence as possible directly from Plaintiff. If, after the parties confer, Defendant still seeks information which is not obtainable through Plaintiff, then it may redraft non-party subpoenas which are more limited in their scope. The Court cautions Defendant to avoid discovery requests that amount to mere fishing expeditions.

Accordingly, after due consideration, it is

### ORDERED:

1. Plaintiff's Amended Motion to Quash and/or Motion for Protective Order (Doc. 16) is **GRANTED.**

2. Plaintiff's Motion to Quash and/or Motion for Protective Order (Doc. 14) is **DENIED** as Moot.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this 6th day of June, 2006.

MONTE C. RICHARDSON

UNITED STATES MAGISTRATE JUDGE [*16]

LEXSEE 2007 US DIST LEXIS 70376

## DAVID CHAMBERLAIN, -Plaintiff -v- FARMINGTON SAVINGS BANK, -Defendant

### CIVIL 3:06CV01437 (CFD)

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

*2007 U.S. Dist. LEXIS 70376*

**September 25, 2007, Decided**

**SUBSEQUENT HISTORY:** Motion denied by *Chamberlain v. Farmington Sav. Bank, 2007 U.S. Dist. LEXIS 87735 (D. Conn., Nov. 30, 2007)*

**COUNSEL:** [*1] For David Chamberlain, Plaintiff: Mary E. Kelly, LEAD ATTORNEY, Livingston, Adler, Pulda, Meiklejohn & Kelly, Hartford, CT.

For Farmington Savings Bank, Defendant: James F. Shea, LEAD ATTORNEY, Jackson Lewis-Htfd, Ct, Hartford, CT; Sheldon D. Myers, LEAD ATTORNEY, Kainen, Escalera & McHale, PC, Hartford, CT.

**JUDGES:** Thomas P. Smith, United States Magistrate Judge.

**OPINION BY:** Thomas P. Smith

## OPINION

### *RULING ON PLAINTIFF'S MOTION TO QUASH AND FOR A PROTECTIVE ORDER*

Plaintiff, David Chamberlain, moves to quash the subpoenas duces tecum served upon his former employers by the defendant, Farmington Savings Bank, and for a protective order pursuant to *Federal Rules of Civil Procedure 45* and *26 (c).* (Dkts. ## 26, 27). For the reasons stated herein, the plaintiff's motions are **GRANTED.**

### I. BACKGROUND

This case arises out of the plaintiff's claim that he was discriminated against and subsequently terminated by the defendant because of his age and disability and in retaliation for his exercise of rights under the Family Medical Leave Act, *29 U.S.C. §§ 2612 et seq.* (Complaint P 40). The defendant maintains that it terminated

the plaintiff for poor performance. (D's Mem. Opp. at 2).

On July 27, 2007, the defendant issued notices [*2] of intent to serve subpoenas duces tecum to the plaintiff's former employers, New Alliance Bank and Citizen's Bank, seeking the plaintiff's prior employment records. (Dkts. ## 26, 27; Exh. A). Specifically, the defendant requested "[a]ny and all records relating to [the plaintiff], . . . including but not limited to his: personnel file; any investigative file relating to complaints he lodged or complaints lodged about him; resume; background check documents; and notes from any interviews with or investigations relating to [the plaintiff]." (Id., Exh. A at 5). The plaintiff has moved to quash the subpoenas and for a protective order on the grounds that the defendant's requests are overbroad, not reasonably calculated to lead to the discovery of admissible evidence, and will subject the plaintiff to an unwarranted intrusion, annoyance, embarrassment and oppression. (P.'s Mem. at 1). In opposition, the defendant claims that the plaintiff's prior employment records are discoverable because they may contain information relevant to: (1) its after-acquired evidence defense; (2) the plaintiff's credibility as a witness; and (3) its defense that it terminated the plaintiff for performance reasons. [*3] (D.'s Mem. Opp. at 5).

### II. DISCUSSION

#### A. Plaintiff's Standing to Move to Quash the Subpoenas

As an initial matter, the court must consider whether the plaintiff has standing to move to quash the subpoenas served on his former employers. Ordinarily, a party does not have standing to quash a subpoena served on a third party, unless the party has a personal right or privilege with respect to the requested documents. *See, e.g., Chemical Bank v. Dana, 149 F.R.D. 11, 13 (D. Conn. 1993); see also* 9A, Charles A. Wright & Arthur R. Mil-

ler, Federal Practice & Procedure § 2459, at 41 (2d ed. 1995). The plaintiff clearly has a personal right with respect to the information contained in his employment records. Additionally, the court notes that the plaintiff has standing to challenge the subpoenas on the basis of his having moved for a protective order pursuant to *Rule 26*. It is well-settled that the scope of discovery under a *Rule 45* subpoena is the same as that permitted under *Rule 26. See Fed. R. Civ. P. 45* Advisory Committee Notes to 1970 Amendment ("the scope of discovery through a subpoena is the same as that applicable to *Rule 34* and the other discovery rules"); *see also* 9A Wright & Miller [*4] § 2459, at 42 (scope of discovery through a subpoena is "exceedingly broad" and incorporates the provisions of *Rules 26 (b)* and *34*). The court, therefore, will consider the pending motions in view of the standards set forth in *Rule 26*.

## B. Standard of Review

Pursuant to *Rule 26 (b)*, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." *Fed. R. Civ. P. 26 (b) (1)*. Furthermore, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The term "relevant" should be construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964 F.2d 106, 114 (2d Cir. 1992)* (quoting *Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978))*.

Despite the broad scope of discovery, there are certain limitations. For instance, discovery of matters not "reasonably calculated to lead to the discovery of admissible evidence" is not within the [*5] scope of *Fed. R. Civ. P. 26 (b) (1)*. *Oppenheimer Fund, Inc., 437 U.S. at 351-52*. The Federal Rules afford courts wide discretion in resolving discovery disputes, which should be exercised by "determining the relevance of discovery requests, assessing their oppressiveness, and weighing these factors in deciding whether discovery should be compelled." *Yancey v. Hooten, 180 F.R.D. 203, 207 (D.Conn. 1998)*. The party resisting discovery bears the burden of showing why discovery should be denied. *Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)*.

## 1. After-Acquired Evidence

The defendant claims that the plaintiff's prior employment records may contain information relevant to an after-acquired evidence defense and are, therefore, discoverable. (D's Mem. Opp. at 5-6). Specifically, the de-

fendant asserts that the plaintiff's records may contain evidence that the plaintiff misrepresented information on his employment application or during the course of his employment with the defendant concerning his previous employment and performance history, which would limit his claim for relief pursuant to this defense. (Id.). The plaintiff maintains that discovery for the purpose of uncovering [*6] evidence from which to establish an after-acquired evidence defense is improper and would subject the plaintiff to unnecessary embarrassment, annoyance and oppression. (P's Mem. at 4-6).

The after-acquired evidence defense, recognized by the Supreme Court in *McKennon v. Nashville Banner Publishing Co., 513 U.S. 352, 115 S. Ct. 879, 130 L. Ed. 2d 852 (1995)*, provides that an employee's relief can be limited by evidence of wrong-doing discovered after his or her termination that would have provided a legitimate basis for such termination. *Id. at 362*. While recognizing this defense, the Court also cautioned against the potential for abuse of the discovery process by employers seeking to limit their liability through an after-acquired evidence defense, noting the ability of courts to curb such abuses through the Federal Rules of Civil Procedure. *Id. at 363*. The Court stated: "The concern that employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist claims under the Act is not an insubstantial one, but we think the authority of the courts . . . to invoke the appropriate provisions of the Federal Rules of Civil Procedure will deter most [*7] abuses." *Id.* Several lower courts have relied on *McKennon* in holding that the after-acquired evidence defense cannot be used to pursue discovery in the absence of some basis for believing that after-acquired evidence of wrong-doing will be revealed. *See, e.g., Rivera v. Nibco, Inc., 364 F.3d 1057, 1071-72 (9th Cir. 2004); Maxwell v. Health Ctr. of Lake City Inc., No. 3:05-CV-1056-J-32MCR, 2006 U.S. Dist. LEXIS 36774, 2006 WL 1627020 at *5 (M.D. Fla. June 6, 2006); Premer v. Corestaff Servs., L.P., 232 F.R.D. 692 (M.D. Fla. 2005)*.

Here, the defendant has not presented any evidence to suggest that the plaintiff may have misrepresented information to the defendant, which would have provided legitimate grounds for his termination. For example, the defendant has not pointed to any statements made by the plaintiff during his deposition or in response to interrogatories indicating that he may not have fully disclosed information to the defendant regarding his prior employment. *See Premer, 232 F.R.D. at 693* (limited production from former employers appropriate to support after-acquired evidence defense in view of discrepancy between plaintiff's interrogatory responses and employment application); *Graham v. Casey's General Stores, 206 F.R.D. 251, 255-56 (S.D. Ind. 2002)* [*8]

(certain prior employment records discoverable in view of concession made by plaintiff as to prior criminal conviction in order to determine whether plaintiff was truthful about events surrounding the termination of her previous employment). Rather, the defendant seeks discovery of the plaintiff's records in order to search for information from which to establish such a defense. The court finds that the defendant cannot use the after-acquired evidence defense to conduct extensive discovery into the plaintiff's prior employment records on the basis of pure speculation. Under such circumstances, production of the plaintiff's records would constitute an unwarranted intrusion.

## 2. Credibility

The defendant also claims that information contained in the plaintiff's prior employment records is relevant to his credibility as a witness. The defendant maintains that the records are discoverable in order to determine whether the plaintiff has been truthful about his performance history and his reasons for leaving his former positions. (D's Mem. Opp. at 5). As above, the defendant has not alleged any reason to believe that the plaintiff has misrepresented information during the course of this litigation [*9] with regard to his previous employment to substantiate such a broad search of his employment records on this ground.

## 3. Performance History

Finally, the defendant claims that information as to the plaintiff's performance history is relevant to its defense that it terminated the plaintiff because of poor performance. (D's Mem. Opp. at 7). The defendant asserts that the plaintiff's records may reveal that he did not have the ability to perform similar duties in his former employment. (Id. at 8).

The defendant's argument is unavailing. The court finds that evidence of the plaintiff's performance history is neither relevant nor admissible for the purpose of showing that the plaintiff performed poorly in his position with the defendant. First, the plaintiff's performance history is not relevant to the issues involved in the current case; rather, at issue is the plaintiff's performance in his position with the defendant. Second, the defendant's request for production of documents relating to the plaintiff's performance history is not reasonably calculated to lead to the discovery of admissible evidence. The defendant seeks to discover evidence of the plaintiff's performance history in order [*10] to show that he has a propensity for certain performance deficiencies. Such evidence is inadmissible under *Federal Rule of Evidence 404 (a)*, which provides that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith . . . ." *Fed. R. Evid. 404 (a)*; *see also, e.g., Zubulake v. UBS Warburg LLC, 382 F. Supp. 2d 536, 540-41 (S.D.N.Y. 2005)*. The plaintiff's performance history, therefore, does not provide a basis for the discovery sought here.

## III. CONCLUSION

The court finds that the defendant's discovery requests are overbroad, not reasonably calculated to lead to the discovery of admissible evidence, and would subject the plaintiff to unwarranted intrusion. For the foregoing reasons, the plaintiff's motions to quash and for protective orders, (Dkts. ## 26, 27), are **GRANTED**. This is not a recommended ruling. This is a discovery ruling and order reviewable pursuant to the "clearly erroneous" standard of review. *28 U.S.C. 636 (b) (1) (A); Fed. R. Civ. P. 6 (a), (e)* and *72 (a)*; and Rule 2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court. *See 28 U.S.C. § 636 (b)* (written objections [*11] to ruling must be filed within ten days after service of same).

**IT IS SO ORDERED.**

**Dated at Hartford, Connecticut this 25th day of September, 2007.**

**Thomas P. Smith**

**United States Magistrate Judge**

LEXSEE 2007 US DIST LEXIS 73437

**KAUTHER BADR, Plaintiff, v. LIBERTY MUTUAL GROUP, INC., Defendant.**

**Civ. No. 3:06CV1208(AHN)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

*2007 U.S. Dist. LEXIS 73437*

**September 27, 2007, Decided**
**September 28, 2007, Filed**

**COUNSEL:** [*1] For Kauther Badr, Plaintiff: Claire E. Ryan, LEAD ATTORNEY, Martin, Lucas & Chioffi - Stamford, Stamford, CT; John M. Reh, LEAD ATTORNEY, Martin, Lucas & Chioffi - Stamford, Stamford, CT; Scott R. Lucas, LEAD ATTORNEY, Martin, Lucas & Chioffi, Stamford, CT.

For Liberty Mutual Group, Inc., Defendant: Alison Jacobs Wice, LEAD ATTORNEY, Jackson Lewis - Stft,CT, Stamford, CT; Holly L. Cini, LEAD ATTORNEY, Jackson Lewis - Htfd, CT, Hartford, CT; Margaret J. Strange, LEAD ATTORNEY, Jackson Lewis - Htfd, CT; Hartford, CT.

**JUDGES:** Alan H. Nevas, United States District Judge.

**OPINION BY:** Alan H. Nevas

**OPINION**

*RULING ON DISCOVERY MOTIONS*

This is an employment discrimination and retaliation case brought under Title VII. The plaintiff, a practicing Muslim of Arabic descent, alleges that three of her co-workers harassed her because of her gender, national origin and religion. She further alleges that the defendant fired her as a result of her complaints to management regarding the harassment.

Currently before the court are the plaintiff's motion to quash subpoena duces tecum [doc. # 31], defendant's motion to compel production of psychotherapy records [doc. # 37], and plaintiff's motion to compel payment of expert fee [doc. # 40]. [*2] The court heard oral argument on all three motions on September 4, 2007. [1]

> 1   The plaintiff also filed a motion for sanctions and attorney's fees [doc. # 40] pursuant to *Fed. R. Civ. P. 37(a)(4)*, and the defendant also sought

attorney's fees and sanctions in its motion to compel [doc. # 37]. The court did not hear oral argument on the issue of sanctions, but the court finds that the parties shall bear their own attorney's fees and costs because both parties were unable to resolve their respective discovery disputes without the court's involvement, and the court grants in part both parties' motions to compel. *See Almonte v. Coca-Cola Bottling Co. of New York, Inc., 169 F.R.D. 246, 248 (D. Conn. 1996)*(noting that the decision to impose sanctions is within the discretion of the district court); *Fed. R. Civ. P. 37(a)(4)(A)* ("If [a motion to compel] is granted . . . the court shall . . . require the party whose conduct ... necessitated the motion . . . to pay the moving party the reasonable expenses incurred in making the motion.")

*DISCUSSION*

The plaintiff argues in its motion to quash that the defendant only seeks to prove that she brought other claims against her previous employer and is therefore [*3] litigious. The defendant counters that it is the plaintiff's credibility that is at issue, not her litigious nature. The plaintiff also filed a motion to compel the defendant to pay her treating physician a fee for his deposition testimony. In response, the defendant cancelled the deposition of the plaintiff's treating physician and filed a motion to compel the production of the plaintiff's psychotherapy records because the plaintiff redacted portions of them, claiming that the passages were protected by both the attorney-client and psychotherapist privileges.

*I. Motion to Quash Subpoena Duces Tecum*

The defendant filed a notice of intent to serve subpoena duces tecum [doc. # 30] on Amy Ferris, a human resources generalist at Enterprise Rent-A-Car ("Enterprise"), the plaintiff's previous employer and a nonparty.

The plaintiff now seeks to quash the defendant's subpoena duces tecum on the grounds that it will not lead to the discovery of relevant evidence and is overly broad on its face.

## A. *Standing*

The parties do not address the issue of standing, but because the subpoena is directed to a nonparty and it is the plaintiff who seeks to quash it, the court will address this issue.

Normally [*4] only the person or entity to whom a subpoena is directed has standing to file a motion to quash. *See Chemical Bank v. Dana, 149 F.R.D. 11, 13 (D. Conn. 1993)*. However, *Rule 45(c)(3)(A)* states that, "[o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies." *See Fed. R. Civ. P. 45(c)(3)(A)*. The plaintiff may assert a privacy interest in her personnel files, though they are in the possession of her former employer. *See Conn. Gen. Stat. § 31-128f* (requiring employee's consent to disclose personnel files absent subpoena or other judicial order). Hence, the plaintiff's interest in keeping her personnel files private gives her standing under *Fed. R. Civ. P. 45(c)(3)(A)* to challenge the subpoena. *See Richards v. Convergys Corp., Civ. No. 2:05-cv-790, 2007 U.S. Dist. LEXIS 9131, 2007 WL 474012, at *1 (D. Utah Feb. 7, 2007)* (holding that because of privacy interests, employee had standing to challenge third party subpoena that sought her personnel files, and citing with approval to other courts that reached the same conclusion).

## B. *Standard*

Discovery of matters "relevant to the subject [*5] matter involved in the action" is appropriate. *See Fed. R. Civ. P. 26(b)(1)*. Relevance for discovery purposes means information that is reasonably calculated to lead to the discovery of admissible evidence. *See Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991)*. Additionally, "whether a specific discovery request seeks information relevant to a claim or defense will turn on the specific circumstances of the pending action. . . ." 6 James Wm. Moore, et al., *Moore's Federal Practice § 26.41[6][c]* (3d ed. 2002)(citing *Fed. R. Civ. P. 26(b)(1)* advisory committee note (2000)).

## C. *Discussion*

The defendant argues that the plaintiff lied under oath when she stated that she had not filed a claim against anyone at Enterprise. In its subpoena, the defendant seeks the following documents from Enterprise:

> Any and all records relating to former employee Kauther Badr (approximate dates of employment in the Greenwich, CT office: May 2002 - October 2003), including but not limited to her: personnel file; any investigative file relating to complaints she lodged or complaints lodged about her; resume; background check documents; and notes from any interviews with or investigations [*6] relating to Ms. Badr.

The plaintiff filed a motion to quash the subpoena duces tecum [doc. # 31] on the grounds that the defendant seeks to use the documents to prove that the plaintiff is litigious because she allegedly filed a claim against Enterprise. The plaintiff argues that the subpoena is not reasonably calculated to lead to the discovery of admissible evidence pursuant to *Fed. R. Civ. P. 26(b)*, and that evidence of a party's litigiousness is inadmissible at trial. *See Outley v. City of New York, 837 F.2d 587, 593 (2d Cir. 1988)*.

The defendant counters that *Outley* involved admissibility of prior claims at trial, and not at the discovery phase, where the standard is much lower. In addition, the plaintiff stated in her deposition that she did not file any claims against anyone at her previous employer, Enterprise, but the defendant asserts that it has a "good faith basis" to believe that the plaintiff lied about this under oath. Specifically, the defendant alleges that the plaintiff filed a claim or complaint against her former manager at Enterprise for sexual harassment. Therefore, the purpose of the subpoena is to attack the plaintiff's credibility, not her litigious nature.

The [*7] court agrees that whether the plaintiff was untruthful in her deposition about prior claims may be relevant to the current action, and meets the standard for relevance set forth in *Rule 26(b)(1)*. *See, e.g., Graham v. Casey's General Stores, 206 F.R.D. 251, 256 (S.D. Ind. 2002)* (holding that plaintiff's personnel files should be produced to allow the defendant to determine if she filed frivolous claims in the past, subject to a protective order to guard the plaintiff's privacy interests in her personal file). The plaintiff's truthfulness regarding previous claims can be relevant to whether her current allegations are to be believed.

However, the defendant seeks "any and all records relating to" the plaintiff, not just documents that pertain directly to whether she filed a claim or complaint against a manager at Enterprise. The subpoena, as it is currently drafted, is overly broad. *See, e.g., Franzon v. Massena Mem. Hosp., 189 F.R.D. 220, 222 (N.D.N.Y. 1999)* (finding that defendant's discovery request for "any and

all documents" without limitations is overbroad); *Richmond v. UPS Service Parts Logistics,* No. IP01-1412, 2002 U.S. Dist. LEXIS 7496, 2002 WL 745588, *4 (S.D. Ind. Apr. 5, 2002) (holding that a **[*8]** discovery request for the plaintiff's entire personnel file is overly broad on its face and does not comply with the standard set forth in *Rule 26*). Accordingly, the court shall narrow the scope of the subpoena and limit it to seek the production of only those documents from Enterprise that concern prior claims or complaints the plaintiff may have filed against other Enterprise employees.

## II. *Motion to Compel Production of Psychotherapy Records*

When the plaintiff produced her psychotherapy records in response to a discovery request from the defendant, she redacted portions of 11 of the 19 records produced. The defendant filed a motion to compel the plaintiff to produce unredacted copies of the records. The defendant argues that the records are relevant to its defense of the case. Further, the plaintiff has put her mental condition at issue by alleging in her complaint that she "[h]as suffered and will continue to suffer past and future physical and emotional harm" as a result of the defendant's conduct, and she seeks compensatory damages from the defendant for "emotional pain."

The plaintiff argues that the redacted portions are protected by the attorney-client privilege and the patient-therapist **[*9]** privilege. According to *Murray v. Bd. of Educ. of New York, 199 F.R.D. 154, 155 (S.D.N.Y. 2001),* "disclosure of communications protected by the attorney-client privilege within the context of another privilege does not constitute waiver of the attorney-client privilege." *Id.*

However, when a plaintiff independently seeks treatment from a psychotherapist and claims that the defendant caused her to suffer emotional distress, she waives the privilege and the records must be produced in their entirety. *See Murray, 199 F.R.D. at 156-57* ("[T]he Court declines to strain the attorney-client privilege to apply to a third party who is not consulted to assist the attorney.").

This court agrees with the reasoning in *Murray.* The plaintiff already produced her records to the defendant and there is no indication that her attorney initially advised her to seek treatment from Dr. Cohen. Accordingly, neither privilege protects plaintiff's redacted communications.

The court conducted an *in camera* review of the redactions and marked the records that the plaintiff must produce to the defendant in unredacted form. The remaining redactions are not relevant to this action under

*Fed. R. Civ. P. 26(b)(1)* and thus **[*10]** the plaintiff is not obliged to produce them.

## III. *Motion to Compel Payment of Expert Fee*

The plaintiff argues that Dr. Cohen, the plaintiff's treating psychologist, is entitled to a "reasonable fee" in the manner of an expert witness for his deposition testimony as opposed to the $ 40 fee set forth in *28 U.S.C. § 1821* for lay witnesses.

The court acknowledges that there is a split of authority on this issue. Some courts have held that a treating physician, if he is testifying solely to the facts gleaned during treatment of the plaintiff, is a regular fact witness and is entitled only to the statutory $ 40 fee. *See Zanowic v. Ashcroft,* No. 97 Civ. 5292, 2002 U.S. Dist. LEXIS 7772, 2002 WL 826878, at *2 (S.D.N.Y. Apr. 30, 2002)(declining to authorize a fee in excess of $ 40 for a treating physician, though noting that additional compensation for physician-witnesses is a "compelling argument"); *Matias v. United States, 97 Civ. 8957(NRB), 1999 U.S. Dist. LEXIS 23085, 1999 WL 1022132, at *1 (S.D.N.Y. Nov. 5, 1999)*(stating that "a party cannot convert a fact witness into an expert witness by mere designation"). But other courts have held that the opposite is true. In *Lamere v. New York State Office for the Aging, 223 F.R.D. 85, 87-88 (N.D.N.Y. 2004),* **[*11]** the court stated:

> [W]e cannot completely limit a treating physician to solely factual testimony. A treating physician is no less a person with specialized knowledge and, in the scheme of her physician duties, provides opinions of various nature in the process of treating to her patient. In this respect, we view the doctor's testimony as far broader than just a mere fact witness but as an expert. . . .

*Id. at 87-88.* This court agrees. The nature of Dr. Cohen's testimony goes well beyond a lay witness who, for instance, recounts his version of a car accident that he witnessed. Dr. Cohen's expertise coupled with factual knowledge about the plaintiff allow him to draw conclusions about the plaintiff's course of treatment, progress and prognosis, as well as the possible origins of her mental or emotional condition. Accordingly, Dr. Cohen is a sort of "hybrid" expert. He fits squarely within the definition of *Fed. R. Evid. 702,* yet he is not designated as an expert witness and the court will not require that he file an expert report. *See, e.g., Ordon v. Karpie, 223 F.R.D. 33, 36 (D. Conn. 2004)*(stating that a treating physician may testify and provide an opinion based on specialized scientific **[*12]** knowledge as provided in

*Rule 702* in conjunction with the scope of treatment but is not required to provide an expert report); *Lamere, 223 F.R.D. at 89* (noting with approval that the advisory committee's note to *Rule 26(a)(2)* states that "treating physicians can be deposed or called to testify at trial without the requirement of a written report"). Accordingly, Dr. Cohen is entitled to a fee in excess of $ 40 as set forth in *28 U.S.C. § 1821.*

In addition, the fee that Dr. Cohen seeks is reasonable. The court considers the following factors to make this determination:

> (1) the witness's area of expertise, (2) the education and training that is required to provide the expert insight that is sought, (3) the prevailing rates for other comparably respected available experts, (4) the nature, quality and complexity of the discovery responses provided, (5) the cost of living in the particular geographic area, (6) the fee being charged by the expert to the party who retained him, (7) fees traditionally charged by the expert on related matters, and (8) any other factor likely to be of assistance to the court in balancing the interests implicated by *Rule 26.*

*Coleman v. Dydula, 190 F.R.D. 320, 324 (W.D.N.Y. 1999).* **[*13]** Dr. Cohen is a licensed psychologist in Stamford, Connecticut and has been in practice for 25 years. He charges $ 250 an hour for testimony and estimates that preparation for and attendance at the deposition will take approximately five hours. Dr. Cohen seeks a total of $ 1,250 as compensation for his deposition testimony. Dr. Cohen states in his affidavit that his $ 250 fee is commensurate with those charged by other psychologists in Fairfield County with similar expertise and who provide similar services.

Further, the defendants cancelled Dr. Cohen's first scheduled deposition the day before it was noticed and Dr. Cohen already had cancelled all of his scheduled patients for that afternoon. The defendant presumably will ask that Dr. Cohen once again cancel all of his patients for half a day to depose him.

As the court in *Lamere* noted:

> Physicians provide invaluable services to the public and should be remunerated for their time when they cannot deliver medical care. They often have substantial overhead costs that they incur whether they are creating a patient or testifying about one. Litigators and their clients typically obtain physician testimony by deposition rather than by imposing **[*14]** the additional burdens associated with attendance at trial. They also respect the need to compensate physician-witnesses to the extent necessary to cover their overhead costs and to pay them a fee commensurate with their professional standing and special expertise.

*Lamere, 223 F.R.D. at 92* (citing *Haslett v. Texas Indus., Inc., Civ. No. 397-CV-2901D, 1999 U.S. Dist. LEXIS 9358, 1999 WL 354227, at *2 (N.D. Tex. May 20, 1999).* Moreover, the $250 hourly rate is within the range of other courts' holdings on the compensation of treating physicians. *See, e.g., Coleman v. Dydula, 190 F.R.D. 320 (W.D.N.Y. 1999)* (finding $ 250 to be a reasonable hourly rate for a treating physician); *Magee v. Paul Revere Life Ins. Co., 172 F.R.D. 627, 645-46 (E.D.N.Y. 1997)* (holding that $ 250 per hour was a reasonable fee for a treating psychiatrist's deposition). Accordingly, the defendant shall pay Dr. Cohen the amount of $ 1,250 at the time of his deposition.

*CONCLUSION*

For the foregoing reasons, the plaintiff's motion to quash subpoena duces tecum [doc. # 31] is GRANTED IN PART and DENIED IN PART. Insofar as the defendant seeks the plaintiff's entire personnel file, and "any and all records" that pertain to the plaintiff, the motion **[*15]** is GRANTED. Insofar as the defendant seeks documents that relate specifically to complaints the plaintiff lodged against fellow employees or managers during the course of her employment at Enterprise, the motion is DENIED. The defendant's motion to compel production of psychotherapy records [doc. # 37] is GRANTED IN PART and DENIED IN PART. After an *in camera* review, the court directed the plaintiff to produce certain unredacted records relevant to this action. The plaintiff's motion to compel expert fee [doc. # 40] is GRANTED. The defendant shall pay Dr. Cohen the amount of $ 1,250 at the time of his deposition. The plaintiff's motion for sanctions [doc. # 41] is DENIED.

SO ORDERED this the 27th day of September 2007, at Bridgeport, Connecticut.

Alan H. Nevas

United States District Judge

LEXSEE 2002 U.S. DIST. LEXIS 7496

**DALE E. RICHMOND, Plaintiff, vs. UPS SERVICE PARTS LOGISTICS d/b/a UPS LOGISTICS GROUP, Defendant**

**CAUSE NO. IP01-1412-C-H/G**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION**

*2002 U.S. Dist. LEXIS 7496*

**April 25, 2002, Decided**

**DISPOSITION:** [*1] Plaintiff's emergency motion to quash non-party subpoenas duces tecum granted in part and denied in part.

**COUNSEL:** For Plaintiff: Denise Larue, Haskin Lauter Cohen & Larue, Indianapolis, IN.

**JUDGES:** Tim A. Baker, United States Magistrate Judge, Southern District of Indiana.

**OPINION BY:** Tim A. Baker

**OPINION**

**ENTRY ON PLAINTIFF'S EMERGENCY MOTION TO QUASH NON-PARTY SUBPOENAS DUCES TECUM**

**I. Background**

Plaintiff Dale E. Richmond filed suit alleging violations of the Americans with Disabilities Act of 1990, *42 U.S.C. § 12101 et. seq.*, the Family and Medical Leave Act of 1993, *29 U.S.C. § 2601 et. seq.*, and the Employees Retirement and Income Security Act of 1974, *29 U.S.C. § 1001 et. seq.* On or about February 21, 2000, Richmond began his employment with Defendant UPS Service Parts Logistics. Richmond worked there until his termination on July 11, 2001.

Upon completion of preliminary discovery, Defendant served non-party subpoenas duces tecum on six of Richmond's previous employers and temporary employment agencies dating back to 1994. The subpoenas requested:

> Any and all documents pertaining to Plaintiff [*2] which in any way consti-

tute, evidence, contain, discuss or refer to, directly or indirectly:

> (1) any and all applications for employment and related documentation;

> (2) any and all resumes and/or other records of employment history;

> (3) the entire personnel file concerning Plaintiff's employment;

> (4) offers of employment;

> (5) terms, benefits, and conditions of employment;

> (6) employment contracts, if any;

> (7) job requirements;

> (8) evaluations, reviews, appraisals and/or other communications of any kind, whether formal or informal, relating to the job performance, conduct, and/or behavior of Plaintiff;

> (9) formal and/or informal warnings to, reprimands of, and/or discipline regarding Plaintiff; and

> (10) salary, wages, earnings, compensation, commissions, bonuses, benefits of any kind, and/or any other form of income or renumeration provided or due Plaintiff.

[Pl.'s Br., p. 3].

Richmond objects to these requests, claiming they are irrelevant to his claims, not reasonably calculated to lead to the discovery of admissible evidence, overbroad, and lack specificity. [Pl.'s Br., pp. 3-4]. In addition,

Richmond notes that much of [*3] the information sought in the subpoenas is readily obtainable through the authorizations for the release of his medical records and tax returns. Id. at 2. Defendant responds that the information sought is directly relevant to the claims and defenses presented in this case, and that little (if any) of the information sought is confidential. [Def.'s Br., p. 2].

Before the Court is Richmond's emergency motion to quash non-party subpoenas duces tecum served on his previous employers and employment agencies. For the reasons set forth below, Richmond's emergency motion to quash non-party subpoenas duces tecum is GRANTED IN PART and DENIED IN PART.

## II. Discussion

### A. Standard on Motion to Quash

*Federal Rule of Civil Procedure 26* permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party." *Sykes v. Target Stores, 2002 U.S. Dist. LEXIS 6627, 2002 WL 554505*, *1 (N.D. Ill. Apr. 15, 2002)*, quoting *Fed. R. Civ. P. 26 (b)(1)*. [1] Discoverable information is not limited to that which would be admissible at trial. Id. Information is relevant for purposes of *Rule 26* "if the discovery appears reasonably calculated to lead to the discovery [*4] of admissible evidence." *Fed. R. Civ. P. 26(b)(1)*.

> 1 Richmond's motion to quash cites to the discovery standard in *Rule 26* as it was written prior to its most recent amendment in 2000. Prior to that amendment, *Rule 26* provided for the discovery of non-privileged information "relevant to the subject matter involved in the pending action."

The implementation of amended *Rule 26* did not necessarily impact the so called "liberal discovery" standard as evidenced by cases interpreting the post-amendment rule. See, e.g., *Hooker v. Norfolk Southern Ry. Co., 204 F.R.D. 124, 126 (S.D. Ind. 2001)* (referencing a "liberal discovery standard"); *White v. Kenneth Warren & Son, Ltd., 203 F.R.D. 364, 366 (N.D. Ill. 2001)* ("Liberal discovery is permitted in federal courts to encourage full disclosure before trial."); *Anderson v. Hale, 202 F.R.D. 548, 2001 WL 503045*, *3 (N.D. Ill. 2001)* ("Information is generally discoverable under the Federal Rules of Civil Procedure. The minimal showings of relevance [*5] and admissibility hardly pose much of an obstacle for an inquiring party to overcome, even considering the recent amendment to *Rule 26 (b)(1)*.").

Nonetheless, *Rule 26(b)(2)* "empowers district courts to limit the scope of discovery if 'the discovery

sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.'" *Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. Feb. 26, 2002)*, quoting *Fed. R. Civ. P. 26(b)(2)*. See also *Cook, Inc. v. Boston Scientific Corp., 2002 U.S. Dist. LEXIS 4334, 2002 WL 406977*, *1 (N.D. Ill. Mar. 15, 2002)*, citing *Fed. R. Civ. P. 26(b)(2)* ("Discovery may be limited if the Court determines that it is unreasonably cumulative or duplicative, or if the burden or expense of the proposed discovery outweighs its likely benefit.") (internal quotations omitted).

The scope of non-party subpoenas under *Rule 45* is as broad as permitted under the discovery rules. See *Jackson v. Brinker, 147 F.R.D. 189, 193-94 (S.D. Ind. 1993)* ("the scope of material obtained by a *Rule 45* subpoena is as broad as permitted under the discovery rules. . . if the material [*6] is relevant, not privileged, and is, or is likely to lead to, admissible evidence, it is obtainable by way of a subpoena.") (internal citations omitted); *Fed. R. Civ. P. 45* advisory committee note to the 1991 amendment. The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant. *Wauchop v. Domino's Pizza, Inc., 138 F.R.D. 539, 543 (N.D. Ind. 1991)*. To meet this burden, the objecting party must "specifically detail the reasons why each [request] is irrelevant...." *Schaap v. Executive Indus., Inc., 130 F.R.D. 384, 387 (N.D. Ill. 1990)*.

### B. Compliance with Local Rules

Local Rule 37.1, entitled "Informal Conference to Settle Discovery Disputes," provides:

> The Court may deny any discovery motion (except those motions brought by a person appearing pro se and those brought pursuant to *Rule 26 (c), Federal Rules of Civil Procedure*, by a person who is not a party), unless counsel for the moving party files with the Court, at the time of filing the motion, a separate statement showing that the attorney making the motion has made a reasonable effort to reach agreement with opposing [*7] attorney(s) on the matter(s) set forth in the motion.

> The statement shall recite, in addition, the date, time, and place of such conference and the names of all parties participating therein. If counsel for any party advises the Court in writing that opposing counsel has refused or delayed meeting and discussing the problems cov-

ered in this rule, the Court may take such action as is appropriate to avoid unreasonable delay.

In addition, Local Rule 26.2, entitled "Filing of Discovery Materials," in subsection (b) states in pertinent part:

> If disclosures, interrogatories, *requests*, answers, responses or depositions are to be used at trial or are necessary to a pretrial motion which might result in a final order on any issue, the portions to be used shall be filed with the Clerk at the onset of the trial or at the filing of the motion insofar as their use can be reasonably anticipated.

See *Long v. Anderson University, 204 F.R.D. 129, 133 (S.D. Ind. 2001).*

In this case, although Defendant did not move to strike Richmond's brief, Defendant correctly notes that Richmond did not submit to the Court a statement showing his compliance with Local [*8] Rule 37.1. In addition, neither party attached as exhibits the non-party subpoenas giving rise to this motion, as contemplated by Local Rule 26.2's reference to "requests." "Failure to comply with the local rules is not merely a 'harmless technicality,' but can be a 'fatal' mistake." *Servin v. GATX Logistics, Inc., 187 F.R.D. 561, 563 (N.D. Ill. 1999),* quoting *Waldridge v. American Hoechst Corp., 24 F.3d 918, 923 (7th Cir. 1994).* However, "where a previous error is the result of negligence or other non-culpable conduct . . . the dispute is better decided on the merits than on procedural grounds." *Fisher v. National Railroad Passenger Corporation, 152 F.R.D. 145, 149 (S.D. Ind. 1993)* (Tinder, J.).

The substance of the subpoenas is not in dispute. Therefore, while attaching them to the briefs would have been helpful to the Court and in compliance with Local Rule 26.2, this shortcoming will not in this instance prevent or delay a ruling on the merits. Likewise, given the asserted "emergency" status of Richmond's motion, the Court will not in this instance require strict compliance with Local Rule 37.1. Accordingly, the Court will consider [*9] Defendant's motion to compel on its merits.

## C. Merits of the Subpoenas

In its response brief, Defendant identifies five reasons why it is entitled to documents contained in the employment files of Richmond's previous employers. Each is addressed below.

### 1. Documents to prove After-Acquired Evidence Defense

Richmond's interrogatory responses reveal that Richmond has a criminal record consisting of both felony and misdemeanor convictions. [Def.'s Ex. B]. Defendant seeks to discover this information to establish the so-called after-acquired evidence defense discussed in *McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 360, 130 L. Ed. 2d 852, 115 S. Ct. 879 (1995).* In McKennon, the Supreme Court concluded that where an employer discovers after termination that the employee engaged in wrongdoing, generally "neither reinstatement nor front pay is an appropriate remedy." See also *Graham v. Casey's General Stores, 206 F.R.D. 251, 2002 WL 416949, *4,* F.R.D. , (S.D. Ind. Mar. 18, 2002), quoting *Hartman Bros. Heating & Air Conditioning, Inc. v. N.L.R.B., 280 F.3d 1110, 1115-16* (7th Cir. Feb. 5, 2002) ("after-acquired [*10] evidence doctrine holds that there is no right to back pay if in the course of litigation over a discriminatory or otherwise unlawful discharge the employer unearths evidence that, had he known it at the outset, would have caused him, without fault, to refuse to hire the employee") (internal quotations omitted). Such after-acquired evidence includes any misrepresentations Richmond may have made to previous employers about his criminal record or his employment history. See, e.g., *O'Neill v. Runyon, 898 F. Supp. 777, 781 (D. Colo. 1995)* (in determining whether after-acquired evidence doctrine barred relief in employment discrimination case, the question was whether, when employee filled out employment application, he lied about having no criminal convictions and thus, employee's belief about prior criminal proceedings was relevant); *Charles v. Cotter, 867 F. Supp. 648, 658 (N.D. Ill. 1994)* (evidence that plaintiff lied about his criminal history on employment applications and was terminated as a result thereof was admissible). If in fact Richmond was untruthful about his criminal convictions to his employers, this information may be used to attack his [*11] credibility. See *Graham, 206 F.R.D. 25, 2002 WL 416949* at *4.

Therefore, Defendant is entitled to discover all employment applications or resumes Richmond provided to previous employers. In addition, Defendant may discover all evaluations, reviews, appraisals, reprimands, or other documents referencing any disciplinary action. Defendant is entitled to this information to determine whether Richmond was untruthful about: (1) his criminal history; (2) his qualifications; or (3) prior discipline, all of which are relevant to Richmond's credibility. [2]

2    Defendant states it is entitled to the same documents addressed in this section because of Richmond's retaliation claim. [Def.'s Br., p. 5]. However, the Court declines to address this issue since these documents are ordered to be produced.

## 2.    Documents    relating    to    Richmond's skills/training/ability

In order for Richmond to demonstrate that he is substantially limited in the major life activity of working, he must show he is precluded from performing [*12] either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. See, e.g., *Stein v. Ashcroft, 284 F.3d 721, 725* (Mar. 21, 2002), quoting *Sutton v. United Air Lines, Inc., 527 U.S. 471, 491, 144 L. Ed. 2d 450, 119 S. Ct. 2139 (1999)* (a plaintiff must show, "at a minimum," that she is "unable to work in a broad class of jobs."). See also *29 C.F.R. § 1630.2(j)(3)(I)* ("the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."). As a result, Defendant states it is entitled to non-party discovery into Richmond's "training, skills, and abilities" by obtaining from his previous employers his job applications, resumes and employment history, personnel file, employment contracts, documentation of job requirements, evaluations, reviews, appraisals, reprimands, and discipline. [Def.'s Br., p. 5].

The Court concluded in Section II C-1 that Defendant is entitled to Richmond's employment applications, resumes, and all evaluations, reviews, appraisals, reprimands, or other [*13] documents referencing any disciplinary action to establish the after-acquired evidence defense. However, Defendant's requests to obtain Richmond's entire personnel file, on its face, is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. See, e.g., *Thomas v. City of Durham, N.C., 1999 U.S. Dist. LEXIS 5361, 1999 WL 203453,* *2 (M.D.N.C. 1999)* ("The Court agrees that a request for the entire personnel files of the employees is, on its face, an overbroad request."); *Franzon v. Massena Memorial Hosp.,189 F.R.D. 220, 222 (N.D.N.Y. 1999)* (finding request overbroad where it seeks "'any and all documents' and provides no meaningful limitations."). The request to obtain any employment contracts Richmond may have entered into is likewise overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Finally, Defendant is not entitled to documentation of "job requirements" because the determination of whether one is a qualified individual with a disability is determined at the time the employment decision was made. See *Bay v. Cassens Transport Company, 212 F.3d 969, 974 (7th Cir. 2000).*

### 3. Information relating [*14]    to income from Social Security Disability benefits

Richmond's interrogatory responses reflect that he received Social Security disability benefits from approximately February 1996 to August 2000. [Def.'s Ex. C]. Defendant seeks information relating to these benefits. Richmond resists, and his motion to quash is proper in this respect for two reasons. First, this information is readily obtainable through the lesser-intrusive means of serving non-party subpoena to the Social Security Administration (SSA) or by reviewing information obtained from the release Richmond signed for Defendant to obtain his tax returns. Second, this information is completely irrelevant to any defense of this case. For instance, as addressed above, the determination of whether Richmond is disabled is made at the time the adverse employment decision was made. As to the impact on Richmond's claim for damages, any Social Security disability benefits he received prior to his termination are irrelevant to his claim for damages. However, if Richmond has received Social Security disability benefits during or subsequent to his employment at Defendant, this information can be discovered through either his tax returns [*15]    or a subpoena to the SSA.

### 4. Documents relating to previously filed complaints, grievances, lawsuits, or charges

Defendant also seeks to discover whether Richmond filed any complaints, grievances, lawsuits, or charges with his former employers. As this Court has previously noted, "it is conceivable that Defendant could discover [plaintiff] filed previous frivolous claims that may go to her credibility and may be so compelling as to warrant their use at trial." *Graham v. Casey's General Stores, 206 F.R.D. 251, 2002 WL 416949* at *5.

Graham is dispositive of this issue. Defendant is entitled to discover complaints, grievances, lawsuits, and charges filed by Richmond during his previous employment.

### III. Conclusion

For the reasons set forth above, Richmond's emergency motion to quash non-party subpoenas duces tecum is GRANTED IN PART and DENIED IN PART. Richmond's motion is denied to the extent that Defendant is entitled to discover the following documents through its non-party subpoenas:

1. resumes;

2. applications for employment;

3. all evaluations, reviews, appraisals, reprimands, or any other documents referencing any disciplinary action; [*16] and

4. complaints, grievances, lawsuits, and charges filed by Richmond.

Richmond's motion is granted in all other respects.

Pursuant to *Rule 26 (c)*, the parties are encouraged to enter into a mutually agreeable protective order to govern the conduct of any further discovery.

So ordered.

DATED this 25th day of April, 2002.

Tim A. Baker

United States Magistrate Judge

Southern District of Indiana